STATE OF NORTH CAROLINA v. WILLIAM THOMAS GLASCO

No. COA02-602

(Filed 2 September 2003)

## 1. Evidence— exhibits—authentication

The trial court did not err in a possession of a firearm by a convicted felon case by admitting several of the State's exhibits including an AK-47 magazine, an AK-47 rifle, a brown bag containing a plastic garbage bag, the plastic garbage bag, and a plastic bag with casings and bullets, even though defendant contends the State failed to lay a proper foundation to authenticate those exhibits, because: (1) defendant neither objected to the admission of the AK-47 magazine at trial nor used it as the basis for an assignment of error in the record on appeal; (2) the State's witnesses properly identified each exhibit at trial and stated that there was no material change in the condition of the exhibits from the seizure to the analysis to the identification during trial; and (3) contrary to defendant's assertion, the testing marks on the garbage bag do not constitute material alterations.

## 2. Firearms and Other Weapons— possession of a firearm by a convicted felon—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of possession of a firearm by a convicted felon under N.C.G.S. § 14-415.1 based on alleged insufficient evidence that defendant had possession of the firearm because circumstantial evidence tended to show that defendant had discharged a

STATE v. GLASCO

[160 N.C. App. 150 (2003)]

gun, giving rise to a reasonable inference that he possessed that gun at least long enough to fire it.

**3. Criminal Law— prosecutor's argument—defendant's alleged flight**

Although the prosecutor made improper remarks concerning defendant's alleged flight in a possession of a firearm by a convicted felon case when in fact defendant was only seen jumping over a nearby fence and the trial court had refused to give a jury instruction on the alleged flight, the trial court did not abuse its discretion by refusing to declare a mistrial because the improper comments did not rise to the level of being prejudicial.

**4. Firearms and Other Weapons— possession of a firearm by a convicted felon—motion to set aside verdict—motion for new trial**

The trial court did not abuse its discretion in a possession of a firearm by a convicted felon case by failing to grant defendant's motion to set aside the verdict or grant a new trial even though defendant contends there was insufficient evidence to infer that he possessed a firearm and the fact that the jury did not find him guilty of firing into an occupied residence suggested that the jury was confused by the charges, because: (1) the evidence on the bag that tended to show defendant had a weapon supported the possession charged, but the jury may not have been persuaded that defendant fired those particular shots; and (2) the evidence was sufficient to support the jury's verdict.

**5. Sentencing— habitual felon—utilizing same felony as basis for underlying conviction**

The indictment used to charge defendant for being an habitual felon did not violate defendant's double jeopardy rights by allegedly utilizing the same felony charge as the basis for his underlying conviction for possession of a firearm by a convicted felon and as one of the three underlying felonies used to elevate him to habitual felon status, because our courts have determined that elements used to establish an underlying conviction may also be used to establish a defendant's status as a habitual felon.

Appeal by defendant from judgment entered 7 September 2001 by Judge Stafford G. Bullock in Superior Court in Vance County. Heard in the Court of Appeals 20 February 2003.

*Attorney General Roy Cooper, by Fred Lamar, Assistant Attorney General, for the State.*

*James N. Freeman, Jr. for defendant/appellant.*

HUDSON, Judge.

The grand jury indicted defendant William Thomas Glasco on charges of discharging a firearm into occupied property, possession of a firearm by a convicted felon, and for being an habitual felon. On 7 September 2001, a jury found him not guilty of discharging a firearm into occupied property, and guilty of possession of a firearm while a felon. Defendant then entered a plea of guilty to the status of habitual felon, and the court sentenced him to a prison term of 121 to 155 months. Defendant now appeals.

He appeals, contending that the trial court erred (1) by allowing various exhibits to be introduced at trial; (2) by denying his motion to dismiss; (3) by not declaring a mistrial based on the prosecutor's improper comments during closing arguments; (4) by failing to grant defendant's motion to set aside the verdict or grant a new trial. Defendant also contends that the trial court should have dismissed the habitual felon indictment because it violated defendant's right to be free from double jeopardy. For the reasons set forth below, we find no prejudicial error.

BACKGROUND

The State's evidence at trial tended to show the following:

On 29 April 2000, around 9:00 or 9:30 p.m., Kathleen Barnes returned to her home in Henderson, North Carolina. She took a shower and, just as she was finishing, heard shooting that sounded like it was coming into her house. Barnes stayed on the floor for a few minutes until the shooting stopped, and then she and her brother heard a commotion and went outside. Barnes testified that she recognized defendant, who was in a police patrol car by that time. Defendant is the first cousin of Barnes' husband.

On cross-examination, Barnes admitted that, before this shooting incident she had sought police assistance because of domestic abuse problems with her husband. After the incident, Barnes reconciled with her husband, but later left him again after he committed domestic violence against her. She also testified that on the day of the shooting, she saw her husband driving by her house with a "very dark person in the truck with him" pointing toward the house.

Barnes' neighbor Barbara Marshall, testified that on the evening of 29 April 2000, she heard a lot of gunshots. She opened her back door and saw a man wearing a black or brown jacket holding a paper sack or trash bag and jumping over the fence behind the utility shed belonging to her neighbor, Ronald Camp. Marshall testified that she later saw defendant in the police car, and that he appeared to be wearing clothes like the person she had seen near the fence. She then identified defendant positively as the man she had seen jumping over the fence.

Deputy Sheriff Lloyd Watkins testified that he was called to the scene at approximately 10:00 or 11:00 p.m. When he arrived, people sitting outside told him that the house was "shot up." After asking the people outside to describe the shooter, police canvassed the area and found defendant standing near the street four or five houses up from Barnes's home. Watkins and Officer Root-Ferguson patted defendant down and found a bundled trash bag under his jacket. Root-Ferguson said that defendant claimed that the bag was a "sweat bag" and that he had been running.

Ronald Camp, who lived two doors down from Marshall near Barnes, testified that he and his family were out when the shooting occurred. When they returned, they noticed the commotion. Camp then searched for and found an AK-47 rifle hidden in a pile of tires beside his backyard shed, and directed the police to the gun.

Officer Root-Ferguson testified that he talked to a number of witnesses at the scene and that none but Marshall could positively identify defendant as the individual they saw involved in the shooting. Root-Ferguson confirmed that his incident report indicated that one of the witnesses told him that defendant was not the man she had seen. Root-Ferguson did not take the name or address of this witness or any of the others who could not positively identify defendant.

Caroline Bachelor, who worked with Kathleen Barnes, testified that an AK-47 identical to the one admitted into evidence at trial was stolen from her house about the same time as the shooting. She said that someone stole the gun from a closet in her home during a house-warming party, and that she reported the theft either the day of the shooting or the day after.

Ricky Navarro, a latent evidence expert for the State Bureau of Investigation, testified that the latent fingerprint remnants found on the AK-47 were not of sufficient quality to form the basis for an identification.

STATE v. GLASCO

[160 N.C. App. 150 (2003)]

Detective Jim Cordell of the Vance County Sheriff's Department testified for defendant. Cordell said that he had interviewed Barnes on 2 May 2000 and 9 May 2000 regarding the shootings. Barnes told Cordell that on 9 May 2000, ten days after the shooting, she had spoken with Bachelor at work. Bachelor had asked Barnes whether her husband was trying to kill her and told Barnes that it was her gun that was used in the shooting. Cordell also indicated that his interview summaries were in the investigation file in the case, but that after he completed the interview, Root-Ferguson took over primary investigation of the case.

ANALYSIS

I.

[1] Defendant first argues that the State failed to lay a proper foundation by which to authenticate State's Exhibits 5-9 and that such failure was prejudicial and requires a new trial. We do not agree.

In North Carolina, evidence that is identified and introduced in court as the object that was actually involved in the subject incident is referred to as "real evidence." *State v. Harbison*, 293 N.C. 474, 483, 238 S.E.2d 449, 454 (1977). When real evidence is properly identified, it is freely admissible. *State v. Williamson*, 146 N.C. App. 325, 335, 553 S.E.2d 54, 61 (2001), *disc. review denied*, 355 N.C. 222, 560 S.E.2d 366 (2002) (citation and quotation marks omitted). It must "simply 'be identified as the same object involved in the incident in order to be admissible' and as not having undergone any material change." *Id.* (citation omitted). Authentication of real evidence " 'can be done only by calling a witness, presenting the exhibit to him and asking him if he recognizes it and, if so, what it is.' " *State v. Bryant*, 50 N.C. App. 139, 141, 272 S.E.2d 916, 918 (1980) (quoting 1 *Stansbury's North Carolina Evidence* § 26 (Brandis rev. 1973)). Moreover, "[a]s there are no specific rules for determining whether an object has been sufficiently identified, the trial judge possesses, and must exercise, sound discretion." *Williamson*, 146 N.C. App. at 336, 553 S.E.2d at 61 (citation and quotation marks omitted).

First, defendant challenges the admission of State's Exhibit 6 (the AK-47 magazine). Defendant neither objected to the admission of State's Exhibit 6 at trial nor used it as the basis for an assignment of error in the record on appeal. Accordingly, we conclude that he waived this issue. N.C.R. App. P. 10(b)(1).

The remaining exhibits defendant challenges are the AK-47 rifle (Exhibit 5); a brown bag that contained a plastic garbage bag (Exhibit 7); the plastic garbage bag (Exhibit 8); and a plastic bag with casings and bullets (Exhibit 9). Officer Root-Ferguson identified each exhibit at trial as being in substantially the same condition and appearance as when he first saw them, with the exception of marks on the garbage bag made by technicians. Root-Ferguson clearly identified the rifle as being the same as that shown to him by Mr. Camp, who had found the rifle near his shed where defendant was seen jumping a fence. Likewise, regarding the garbage bag, Root-Ferguson testified that he found the item on defendant's person, bundled under his jacket. That same night he placed the garbage bag inside a paper bag, sealed it, and marked it as evidence.

Detective John Almond, the officer in charge of the evidence room, then took and retained custody of the garbage bag and the casings and bullets. Almond testified that he was responsible for retaining custody over evidence submitted by the officers, for transferring evidence to the State Bureau of Investigation ("SBI"), and for making the evidence available to the officers for court. He testified that he had custody of State's Exhibits 5, 6, 7, 8, and 9 and was familiar with them. He said that he had delivered the exhibits to the SBI and that they were mailed back to him.

Forensic firearm and tool mark examiner Thomas Trochum tested the garbage bag and the casings and bullets after their receipt by the SBI. Ricky Navarro, the SBI latent evidence expert, tested the rifle and then returned it to Trochum. After concluding his examinations, Trochum returned the exhibits to Roosevelt Ryals, an SBI evidence technician, who then sent them to Almond via United Parcel Service.

This evidence reveals that the State's witnesses properly identified each exhibit at trial and that there was no material change in the condition of the exhibits from the seizure to the analysis and to the identification during the trial. Contrary to defendant's assertion in his brief, the testing marks on the garbage bag do not constitute material alterations. Moreover, even though defendant argues that the rifle and magazine could have been altered or changed because they were discarded in a pile of tires, there was no evidence that they were altered. Officer Root-Ferguson testified simply that the exhibits at trial were the same as those found in the tire pile. We conclude that the exhibits were properly admitted. *E.g.,* *State v. King*, 311 N.C. 603, 618, 320 S.E.2d 1, 10-11 (1984) (weapons,

projectile, and casings properly admitted where the State established a chain of custody and established that there were no material changes in the items' conditions).

## II.

**[2]** Next, defendant argues that the trial court erred by denying his motion to dismiss all charges on the grounds of insufficiency of the evidence. Specifically, he contends that the State failed to prove that he possessed the assault rifle. Again, we disagree.

A motion to dismiss should be denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is that relevant evidence which a reasonable mind would find sufficient to support a conclusion." *State v. Carr*, 122 N.C. App. 369, 372, 470 S.E.2d 70, 72 (1996). In determining whether there is evidence sufficient for a case to go to the jury, the trial court must consider the evidence, both direct and circumstantial, in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *Id.* The trial court neither weighs the evidence nor considers evidence unfavorable to the State because weighing the evidence and assessing the credibility of witnesses fall within the province of the jury. *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed 2d 162 (2002).

Here, defendant was charged with possession of a firearm by a felon in violation of N.C. Gen. Stat. § 14-415.1. Pursuant to section 14-415.1(a), it is unlawful for "any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches." N.C. Gen. Stat. § 14-415.1(a) (2001). Defendant does not challenge his status as a convicted felon; thus, his sole contention on appeal is that the evidence was insufficient for the jury to find that he had possession of the firearm.

Possession may either be actual or constructive. *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998). When the defendant, " 'while not having actual possession, . . . has the intent and capability to maintain control and dominion over' the [property]," he has constructive possession of the item. *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (citation omitted). This Court has

previously emphasized that " 'constructive possession depends on the totality of the circumstances in each case. No single factor controls, but ordinarily the questions will be for the jury.' " *State v. Butler*, 147 N.C. App. 1, 11, 556 S.E.2d 304, 311 (2001), *affirmed*, 356 N.C. 141, 567 S.E.2d 137 (2002) (citation omitted) (emphasis omitted).

Viewed in the light most favorable to the State, we conclude that the circumstantial evidence here was sufficient to withstand a motion to dismiss and allow the jury to resolve the issue. *State v. Clark*, 138 N.C. App. 392, 403, 531 S.E.2d 482, 489 (2000), *cert. denied*, 353 N.C. 730, 551 S.E.2d 108 (2001) ("[a]lthough the State's case centered around circumstantial evidence, taken in the light most favorable to the State, it was sufficient to withstand the defendant's motions to dismiss"). Barnes' neighbor Barbara Marshall, testified that shortly after the shooting incident she saw defendant jumping over a fence into her back yard, near the shed in Ronald Camp's yard. Camp then found the gun in his back yard, near the shed in a pile of tires. The SBI analyst testified that the garbage bag found on defendant's person had firearm discharge residue in it. The analyst also explained that at least two of the holes in the bag were physically altered through melting and chemicals from lead particulate and vapor, signs consistent with discharging a firearm from inside the bag. Because this evidence tended to show that defendant had discharged a gun, we also conclude that it gave rise to a reasonable inference that he possessed that gun, at least long enough to fire it. Such evidence, when taken in the light most favorable to the State, provides a sufficient link between defendant and a firearm to allow for the jury's consideration. *State v. Jackson*, 103 N.C. App. 239, 243, 405 S.E.2d 354, 357 (1991), *affirmed*, 331 N.C. 113, 413 S.E.2d 798 (1992) (issues of constructive possession are properly determined by the jury). We overrule this assignment of error.

### III.

[3] Defendant also argues that the trial court erred by not declaring a mistrial after the State argued facts not in evidence during closing arguments to the jury. More precisely, defendant takes issue with the State's references to his alleged flight from the scene of the crime even though the trial court had refused to give a jury instruction concerning defendant's flight. Although we agree that the remarks were inappropriate, we do not believe that in context they warrant a new trial.

In *State v. Jones*, 355 N.C. 117, 558 S.E.2d 97 (2002), our Supreme Court recognized the need to "strike a balance between giving appropriate latitude to attorneys to argue heated cases and the need to enforce the proper boundaries of closing argument and maintain professionalism." *Id.* at 135, 558 S.E.2d at 108. In assessing those boundaries, the Supreme Court listed four requirements for a closing argument: that it "(1) be devoid of counsel's personal opinion; (2) avoid[s] name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial." *Id.* Such requirements must be viewed in light of the well-established principle that prosecutors are afforded wide latitude in presenting closing arguments to the jury. *See State v. Prevatte*, 356 N.C. 178, 570 S.E.2d 440 (2002), *cert. denied*, —— U.S. ——, 155 L. Ed. 2d 681 (2003). However, as the *Jones* court noted, " 'wide latitude' has its limits." *Jones*, 355 N.C. at 129, 558 S.E.2d at 105.

Here, defense counsel interposed a timely objection to each reference that the State made to defendant's alleged flight; thus, we review the court's rulings for abuse of discretion. *Jones*, 355 N.C. at 131, 558 S.E.2d at 106. A prosecutor's improper remark during closing arguments does not justify a new trial unless it is so grave that it prejudiced the result of the trial. *State v. Westbrooks*, 345 N.C. 43, 70, 478 S.E.2d 483, 500 (1996). Such prejudice is established only where the defendant can show that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morston*, 336 N.C. 381, 405, 445 S.E.2d 1, 14 (1994) (citations and quotation marks omitted).

Here, the prosecutor twice referred to evidence that defendant was seen fleeing from the scene of the crime, when in fact defendant was only seen jumping over a nearby fence, and the trial court had refused to give a jury instruction on the alleged flight. Although we agree with defendant that the prosecutor should not have mentioned defendant's alleged flight, we cannot agree that the error is so grave that it prejudiced the result of the trial. *Westbrooks*, 345 N.C. at 70, 478 S.E.2d at 500. Defendant argues that he should receive a new trial because "this Court cannot say that there can be no reasonable possibility that a different result would have been reached," in the absence of these comments. The standard of review, however, is abuse of discretion prejudicing the outcome. Defendant has not clarified, nor have we been able to ascertain, how the improper com-

ments rise to the level of those that our courts have found to be prejudicial in other cases. *E.g.*, *State v. Allen*, 353 N.C. 504, 508, 546 S.E.2d 372, 374 (2001) (new trial granted where prosecutor told jury during closing arguments that they had been allowed to hear a certain piece of the State's evidence "because the Court found [the evidence was] trustworthy and reliable . . . . If there had been anything wrong with that evidence, you would not have heard that;" court determined that the statement "traveled outside the record"); *State v. Jordan*, 149 N.C. App. 838, 843, 562 S.E.2d 465, 468 (2002) (mistrial granted where the prosecutor compared defendant's counsel to Joseph McCarthy; the prosecutor "thoroughly undermined [the defendant's] defense by casting unsupported doubt on counsel's credibility and erroneously painting defendant's defense as purely obstructionist"). Here, the jury was able to analyze the evidence in so discerning a manner as to find defendant not guilty of discharging a firearm into occupied property, while finding him guilty of possessing a firearm. In sum, we do not think that the trial court abused its discretion in refusing to declare a mistrial.

IV.

[4] Defendant next argues that there was insufficient evidence to infer that he possessed a firearm, and the fact that the jury did not find him guilty of firing into an occupied residence suggests that the jury was confused by the charges since "no evidence was presented that would show [defendant] in possession of a firearm." As discussed above, the evidence on the bag that tended to show defendant had a weapon supported the possession charge, but the jury may not have been persuaded that he fired those particular shots. We believe that the jury's determination that defendant was not guilty of shooting into Barnes' home could indicate the jury's careful deliberation, rather than any confusion on their part. "The decision to grant or deny a motion to set aside the verdict is within the sound discretion of the trial court and is not reviewable absent a showing of an abuse of that discretion." *State v. Serzan*, 119 N.C. App. 557, 561-62, 459 S.E.2d 297, 301 (1995), *cert. denied*, 343 N.C. 127, 468 S.E.2d 793 (1996). When the evidence at trial is sufficient to support the jury's verdict, there is no abuse of discretion in the trial court's denial of defendant's motion to set aside the verdict. *Id.* Because we have held that the evidence was sufficient to support the jury's verdict, there is no abuse of discretion, and defendant's assignment of error is overruled.

STATE v. GLASCO

[160 N.C. App. 150 (2003)]

## V.

[5] This Court, on its own motion, requested that the parties file any additional arguments that they deemed appropriate regarding issues raised by the indictment for habitual felon (01CRS009113), which was not originally in the record on appeal. In response, defendant argues that the indictment violates his constitutional rights by utilizing the same felony charge as the basis for his underlying conviction for possession of a firearm by a convicted felon and as one of the three underlying felonies used to elevate him to habitual felon status. We do not agree.

More specifically, defendant argues that he was impermissibly subjected to double jeopardy because the court used the offense of possession with intent to sell and deliver cocaine to support both the underlying substantive felony (the "felon" portion of the offense of felon in possession of a firearm) and the habitual felon indictment. Our courts have determined that elements used to establish an underlying conviction may also be used to establish a defendant's status as a habitual felon. *State v. Misenheimer*, 123 N.C. App. 156, 158, 472 S.E.2d 191, 192-93 (1996), *cert. denied*, 344 N.C. 441, 476 S.E.2d 128 (1996). As the relevant statutes do not indicate otherwise, we are bound to follow this ruling and reject defendant's argument. N.C. Gen. Stat. §§ 14-7.1 & 7.6 (2001).

## CONCLUSION

For the reasons set forth above, we find no prejudicial error in defendant's conviction.

No Prejudicial Error.

Judges McGEE and STEELMAN concur.