TYSON, Judge.
Chad Braxton Bumpers ("Defendant") appeals from judgment entered after a jury convicted him of possession of a firearm by a felon. We reverse.
I. Factual Background
On 28 November 2014, Franklin County Sheriff's Deputy Stephanie Anders ("Officer Anders") responded to a 911 dispatch call reporting two men communicating threats at the home of Chandle Cook ("Ms.Cook"). Prior to her arrival at the home, she was notified the two men had fled from the scene in a black Nissan Altima. She was provided the vehicle's license plate number. Officer Anders observed a vehicle matching this description driving down Highway 39 and 401 toward Henderson, North Carolina. She followed and initiated a traffic stop of the vehicle.
Officer Anders approached the driver's side of the vehicle and immediately recognized the passenger as Defendant, based upon a "previous interaction" with him. Officer Anders did not recognize the driver of the vehicle, later identified as Raquan Davis ("Davis"). She observed a shotgun located in the console area between the two occupants.
Officer Anders instructed Defendant not to move until she had secured the shotgun, carried it to her patrol vehicle, and unloaded it. Officer Anders arrested Defendant because she knew he was a convicted felon, was not allowed to possess any firearms, and the firearm "was in his vicinity[.]"
Officer Anders testified her search of Defendant did not reveal shell casings or any other contraband or circumstances to connect Defendant with the shotgun. No tests of the firearm for fingerprints were conducted. Neither Defendant nor Davis claimed ownership of the firearm and ownership of the gun was not determined.
A grand jury indicted Defendant on 15 January 2015 on one count of possession of a firearm by a felon. The case was called for trial on 12 August 2015.
During the first morning of trial, the State called Ms. Cook to testify. Though the State had subpoenaed and served her the previous week, Ms. Cook failed to appear. Upon the State's request, the trial court issued a bench warrant, ordering Ms. Cook to be arrested and appear before the court.
Ms. Cook was arrested and taken into custody at 11:27 a.m., after the trial court had recessed for lunch. The trial judge inquired whether Ms. Cook had received the subpoena. She confirmed being served. The trial judge released Ms. Cook after receiving her statement under oath that she would return to court at 2:00 p.m. to testify.
At 1:57 p.m., the trial court was notified Ms. Cook had been involved in a vehicle accident outside of the courthouse and was going to the emergency room. The trial court heard from Ms. Cook's mother and daughter regarding the accident, and instructed them to remind Ms. Cook to return to court the next morning to testify.
The following morning, the trial court was informed Ms. Cook was not present to testify. The State also apprised the trial court that Ms. Cook had been charged with assault the previous day, because she allegedly "assaulted the person that she hit ... in her car." The State requested the trial court issue another bench warrant. The trial court issued a second bench warrant for Ms. Cook. She appeared before the court to testify later that day.
Ms. Cook took the stand and answered the State's preliminary questions. When asked whether she had seen Defendant retrieve a firearm from the Nissan Altima, she refused to answer and asserted her Fifth Amendment right against self-incrimination. The trial court excused the jury and took note of the pending criminal charges against Ms. Cook. The State asserted Ms. Cook's pending criminal charges were entirely unrelated to Defendant's case, and also argued her testimony as a witness in Defendant's case would not incriminate her. The trial court ultimately compelled Ms. Cook to answer questions related to activities and events occurring on 28 and 29 November 2014.
Ms. Cook testified Defendant and Davis were present at her house on the night of 28 November 2014, and that her daughter and Defendant had argued. Ms. Cook testified she provided a statement to Detective Garrett Stanley ("Detective Stanley"), who had responded to the 911 call at her home.
The State asked Ms. Cook whether she had told Detective Stanley the following events: Defendant came to her house and made threats to her daughter while Ms. Cook stood on her front porch. Davis took a firearm from Defendant and put it on his shoulder, while Ms. Cook's daughter got into her vehicle and said she would be back. Defendant and Davis walked back to their vehicle and stated they would wait for Ms. Cook's daughter to return.
Instead of responding yes or no to the State's question, Ms. Cook directed the State to "ask your officer that took my statement." Ms. Cook testified she did not know whether Defendant or Davis had carried the firearm on the night in question and stated: "I can't tell you which one of them had that gun, because I honestly don't know." Ms. Cook also denied she had called 911 that night and did not know who had placed the call.
Detective Stanley testified he responded to a communicating threats 911 call at Ms. Cook's residence on 28 November 2014. He recalled asking both Ms. Cook and her daughter to provide statements regarding the events which had occurred that evening. The State showed Detective Stanley a document marked as State's Exhibit 2. Detective Stanley testified he recognized it as Ms. Cook's statement. Detective Stanley could not recall having seen Ms. Cook write and sign her statement. He also testified he could not identify the handwriting or signature as that of Ms. Cook.
The State moved to admit State's Exhibit 2 into evidence. The trial court examined the document and admitted it into evidence "for the limited purpose of corroboration or impeachment." The trial court also explained to the jury that State's Exhibit 2
is not being admitted to prove the truth of any matter asserted therein, but rather, if you find that it is consistent with the testimony of the witness Chandle Cook, you may consider it then for the purpose of corroboration of her testimony. If you find that it is not consistent with her testimony that you have heard in this courtroom, you may then consider it for purpose of impeachment of her testimony.
Detective Stanley testified he "[v]aguely" remembered going to Ms. Cook's residence and having a conversation with her about the incident. He also could not remember whether Ms. Cook had mentioned a firearm was involved in the incident. Detective Stanley did not see a firearm when he arrived at Ms. Cook's residence.
The State asked Detective Stanley to read State's Exhibit 2 to the jury. Defendant did not object. Detective Stanley read Ms. Cook's written statement to the jury in its entirety, including the following excerpt: "[Defendant] then got out of the car, along with Raquan Davis, walked to the porch with a long gun with a scope on it.... They were on the porch, Raquan then took the gun from [Defendant] and put it on his shoulder."
Officer Anders, who arrested Defendant, testified after she observed Defendant seated in the passenger seat, she noticed a firearm "sitting next to him, between his leg and the center console. So it was in his area, in his possession." After the State asked Officer Anders two more questions, counsel for Defendant stated: "Judge, we object to her testimony of, 'In his possession.' " The trial judge responded "Well, this has been several minutes ago, so there's a waiver at this point. Overruled."
At the close of the State's evidence, Defendant moved to dismiss the charge based upon insufficient evidence. The trial court denied Defendant's motion. Defendant did not present any evidence and renewed his motion to dismiss. The trial court denied this motion.
The jury returned a verdict finding Defendant guilty of one count of possession of a firearm by a felon. The trial court sentenced Defendant to an active term of 13 to 25 months imprisonment. Defendant gave notice of appeal in open court.
II. Issues
Defendant argues the trial court erred by: (1) denying his motion to dismiss based upon insufficient evidence; (2) compelling Ms. Cook to testify after she had invoked her Fifth Amendment right against self-incrimination; (3) allowing Detective Stanley to read State's Exhibit 2 to the jury, because it was neither properly authenticated, nor properly used for impeachment or corroboration purposes; and, (4) overruling Defendant's objection to Officer Anders' testimony stating the shotgun was "in his possession." Defendant also contends these cumulative errors deprived him of a fair trial.
III. Motion to Dismiss
A. Standard of Review
"This Court reviews the trial court's denial of a motion to dismiss de novo. " State v. Smith, 186 N.C.App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation and quotation marks omitted), cert. denied, 531 U.S. 890, 148 L.Ed.2d 150 (2000).
"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied, 515 U.S. 1135, 132 L.Ed.2d 818 (1995).
Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.
Fritsch, 351 N.C. at 379, 526 S.E.2d at 455 (citations and internal quotation marks omitted) (emphasis in original).
B. Analysis
Defendant argues the trial court erred by denying his motion to dismiss the charge. He asserts the State presented insufficient evidence for the jury to consider whether he had actual or constructive possession of a firearm while being a convicted felon. We agree.
N.C. Gen.Stat. § 14-415.1(a) provides: "It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction as defined in [N.C. Gen.Stat. § ] 14-288.8(c)." N.C. Gen.Stat. § 14-415.1(a) (2015).
This Court has previously articulated "[t]here two are elements to possession of a firearm by a felon: (1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." State v. McCoy, 234 N.C.App. 268, 272, 759 S.E.2d 330, 334, disc. review denied, 367 N.C. 791, 766 S.E.2d 653 (2014). Defendant does not dispute he was a convicted felon prior to this arrest. The only pertinent element before us is whether the firearm was in Defendant's possession.
It is well-settled that
[p]ossession of any item may be actual or constructive. Actual possession requires that a party have physical or personal custody of the item. A person has constructive possession of an item when the item is not in his physical custody, but he nonetheless has the power and intent to control its disposition.
State v. Alston, 131 N.C.App. 514, 519, 508 S.E.2d 315, 318 (1998), superseded in part on other grounds by statute as stated in State v. Gaither, 161 N.C.App. 96, 103, 587 S.E.2d 505, 510 (2003) (Alston superseded by N.C. Gen.Stat. § 14-415.1 which contains no time bar for the offense of possession of a firearm by a felon), disc. review denied, 358 N.C. 157, 593 S.E.2d 83 (2004).
In order to establish constructive possession, it is not necessary for a defendant to have exclusive control over the area where the contraband is found. "The defendant may have the power to control either alone or jointly with others." State v. Miller, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (citation omitted). Our Court has emphasized whether constructive possession exists "depends on the totality of the circumstances in each case. No single factor controls, but ordinarily the questions will be for the jury." State v. Butler, 147 N.C.App. 1, 11, 556 S.E.2d 304, 311 (2001) (emphasis and citations omitted), aff'd, 356 N.C. 141, 567 S.E.2d 137 (2002).
If a defendant does not have exclusive control of the location where the contraband was found, "constructive possession of the contraband materials may not be inferred without other incriminating circumstances." State v. Brown, 310 N.C. 563, 569, 313 S.E.2d 585, 589 (1984) (citation omitted); see also State v. Perry, 222 N.C.App. 813, 819-20, 731 S.E.2d 714, 718-19 (2012) (holding evidence of defendant's statement to police that he had "played with the gun" several days prior to his arrest was insufficient to support conviction of possession of firearm by a felon).
Prior decisions, which held the State had presented sufficient circumstantial evidence of constructive possession, are also instructive. In State v. Mewborn, 200 N.C.App. 731, 736, 684 S .E.2d 535, 539 (2009), this Court determined the evidence was sufficient to support an inference that the defendant had constructive possession of a handgun. The State's evidence in Mewborn showed the defendant ran through an open field with something heavy inside his back pocket, appeared to throw something from his pocket, and the recovered weapon was dry and clean, even though the grass in the field where officers discovered the weapon was wet. Id. at 737, 684 S.E.2d at 539.
Similarly, in State v. Glasco, 160 N.C.App. 150, 157, 585 S.E.2d 257, 262, disc. review denied, 357 N.C. 580, 589 S.E.2d 356 (2003), this Court held the trial court's denial of the defendant's motion to dismiss was proper where the evidence "tended to show" the defendant had "discharged a gun." The State's evidence in Glasco showed the defendant was seen jumping over the fence of a yard near the location of the shooting, and the gun was recovered in that same yard. The State's evidence also showed the defendant was found carrying a garbage bag with gunshot residue in it, and "at least two of the holes in the bag were physically altered through melting and chemicals from lead particulate and vapor, signs consistent with discharging a firearm from inside the bag." Id. Based on this evidence, this Court concluded the State had "provide[d] a sufficient link between defendant and a firearm to allow for the jury's consideration." Id. (citation omitted). See also State v. McKiver, ---N.C.App. ---, ---, --- S.E.2d ---, --- (May 17, 2016) (No. COA15-1070) (finding sufficient to submit issue of constructive possession to jury where anonymous 911 caller reported seeing a man wearing a plaid shirt holding a gun near a black car, officer encountered defendant wearing a plaid shirt and standing near a black Mercedes he claimed belonged to him, officers found defendant's medication in the trunk of vehicle, and firearm, recovered approximately ten feet from vehicle, had been stolen in the same town as where vehicle was registered).
In contrast, in Alston, this Court held the evidence was insufficient to show the defendant constructively possessed a firearm. In that case, the defendant was a passenger in a vehicle driven by his wife. Alston, 131 N.C.App. at 515, 508 S.E.2d at 316. The defendant and his wife had equal access to the handgun located on the center console. Id. The handgun was registered to the defendant's wife, and the vehicle was registered to the defendant's brother. Id. at 516, 508 S.E.2d at 317.
Although in Alston the State presented evidence that a child in the car told police, "Daddy's got a gun[,]" the trial court ruled this statement was only admissible for the limited purpose of explaining the testifying officer's conduct. This statement was not used as substantive proof of constructive possession. Id. at 515, 519, 508 S.E.2d at 317, 319. Because the evidence showed no more than the defendant's mere presence in the vehicle where the handgun was located, this Court held the evidence was insufficient to support an inference of the defendant's possession of the handgun. Id.
The instant facts are more similar to those present in Alston. Officer Anders' testimony, viewed in the light most favorable to the State, showed the following: Defendant was a passenger inside a vehicle driven by Davis, and there was a shotgun resting on the center console, next to Defendant's leg. The State did not present any evidence whatsoever regarding who owned the vehicle, or who had purchased and owned the firearm. Both Defendant and Davis had equal access to the firearm. The State failed to present fingerprint evidence or any "other incriminating circumstances" to further link the firearm to Defendant. Brown, 310 NC at 569, 731 S.E.2d at 589.
Ms. Cook's statement, admitted solely for corroboration or impeachment purposes, contradicts the testimony of Officer Anders. Ms. Cook's statement described seeing "a long gun with a scope on it." Officer Anders very specifically testified she removed a "Mossberg 12 gauge pump shotgun" from the vehicle in which Defendant was a passenger. At trial, Officer Anders carefully and distinctly identified the shotgun recovered from the vehicle and made no mention of a "scope on it." The written statement offered and admitted solely to impeach Ms. Cook points toward the insufficiency of the State's evidence. Alston, 131 N.C.App. at 515, 508 S.E.2d at 316.
The trial court admitted Ms. Cook's statement solely for the limited purpose of corroboration or impeachment. Ms. Cook's statement was not offered for the truth of the matter asserted, thus the trial court could not use her statement as substantive evidence to show or prove Defendant's possession of the shotgun. See Alston, 131 N.C.App. at 519 n. 1, 508 S.E.2d at 319 n. 1 (holding where child's statement was admitted for limited purpose of explaining officer's conduct, statement could not be used to prove constructive possession).
Aside from Ms. Cook's statement, the sole evidence the State proffered to establish possession only tended to show Defendant's mere presence inside a vehicle with a firearm located therein. No other substantive evidence specifically links Defendant to the firearm. The State's evidence of possession by Defendant was tenuous at best.
The State failed to present any evidence, which would "definitively link" Defendant to the firearm. State v. Bailey, --- N.C.App. ---, ---, 757 S.E.2d 491, 493 (2014) ("A review of decisions by this Court establishes that when evidence presented definitively links a defendant to a weapon, we have found that the circumstantial evidence of constructive possession was sufficient to withstand a defendant's motion to dismiss."). See also Brown, 310 N.C. at 569, 313 S.E.2d at 588-89. Cf. Alston, 131 N.C.App. at 519, 508 S.E.2d at 319 ; State v. James, 81 N.C.App. 91, 96, 344 S.E.2d 77, 81 (1986) (holding mere presence in room where drugs were located did not in and of itself support an inference of constructive possession). We reverse the trial court's order, which denied Defendant's motion to dismiss for insufficiency of the evidence.
IV. Conclusion
The State failed to present substantial evidence of Defendant's actual or constructive possession of a firearm. The trial court's order denying Defendant's motion to dismiss the charge of possession of a firearm by a felon is reversed. In light of our decision, we need not address Defendant's remaining arguments on appeal.
REVERSED.
Judges CALABRIA and HUNTER, JR. concur.
Report per Rule 30(e).