STATE OF NORTH CAROLINA v. JEFFERY DEVON MEWBORN

No. COA09-343

(Filed 3 November 2009)

**1. Search and Seizure— motion to suppress—failure to stop or submit to police authority—flight**

The trial court did not err in a prosecution for possession of a controlled substance, carrying a concealed firearm, and possession of a firearm by a convicted felon by failing to exclude evidence obtained after officers stopped defendant. Defendant's flight in conjunction with the attendant facts and circumstances supported a reasonable suspicion that defendant was engaged in some criminal activity when he was detained.

**2. Firearms and Other Weapons— possession of firearm by felon—carrying concealed weapon—motion to dismiss—sufficiency of evidence—constructive possession**

The trial court did not err by denying defendant's motion to dismiss the charges of possession of a firearm by a felon and carrying a concealed weapon. There was sufficient evidence for the State to proceed on a theory of constructive possession.

### 3. Constitutional Law— effective assistance of counsel—failure to object

A defendant did not receive ineffective assistance of counsel based on his counsel's failure to object to the introduction of all evidence obtained pursuant to defendant's detention because the failure to object to admissible evidence does not constitute error.

Appeal by Defendant from judgments entered 19 August 2008 by Judge Paul L. Jones in Superior Court, Lenoir County. Heard in the Court of Appeals 16 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General John A. Payne, for the State.*

*S. Hannah Demeritt for Defendant-Appellant.*

McGEE, Judge.

Jeffrey Devon Mewborn (Defendant) was convicted of possession of a controlled substance, carrying a concealed weapon, and possession of a firearm by a convicted felon on 19 August 2008. Defendant was sentenced to consecutive active sentences of forty-five days for carrying a concealed weapon, five to six months for possession of cocaine, and sixteen to twenty months for possession of a firearm by a felon. Defendant appeals.

Officers Williford Jones,[1] Keith Goyette, and Howard King of the Kinston Police Department were patrolling a high crime neighborhood in Kinston in a marked police car on the evening of 12 April 2006. The officers were approaching and questioning people in the neighborhood to "make sure [the people were] in the right area." Officer Goyette testified at trial that this was a common law enforcement practice. While conducting these interviews, the officers saw Defendant and an unidentified man walking in the middle of the street.

The officers approached Defendant and the man to conduct a field interview. The officers testified that Defendant and the man were not doing anything wrong and that the officers did not know Defendant prior to that evening. Rather, they approached the two men because there had been "a lot of problems in that neighborhood . . . and [they] were trying to combat the crime in that particular neighborhood that month."

---

1. We note that in the record transcript, Officer Jones' first name is spelled "Williford," but in the State's brief, his first name is spelled "Willifred."

Officer Goyette testified that the officers pulled alongside the men and, through the open window of their patrol car, "asked the individuals if they would just hold up for a minute, [because they] needed to speak with [the men] for a few minutes." Officer Jones testified that Officer Goyette "motioned to [the men] and asked them to stop." As the officers were getting out of the police car, Defendant turned and started to run away from the car. Officers King and Jones, who had fully exited the police car, gave chase. Officer Goyette, who had not exited the police car, told the other man to wait where he was, and then Officer Goyette followed Officers King and Jones in the police car.

Defendant ran through a darkened field in a residential area and was approximately twenty to thirty feet ahead of the officers. Officer Goyette was about fifteen to twenty yards behind in the police car.

Officer Goyette testified that, as Defendant ran, he appeared to be holding his pants up at his right back pocket and was attempting to throw something out of that pocket. Officer Goyette testified that he believed there was something heavy in Defendant's pocket and, over Defendant's objection, testified that he believed it was a gun. Officers Jones and King testified they never saw Defendant throw anything from his pocket. Officer Goyette testified that while he never actually saw Defendant with a gun and did not actually see Defendant throw a heavy object, he did see Defendant throw a light object, which resembled paper, from his pocket.

Defendant tripped while running and the officers apprehended him. When Officer Goyette approached Defendant, Defendant's back pocket was empty and was "hanging out." While Defendant was on the ground and being handcuffed, Officer Goyette observed him throwing a plastic bag under the police car. Upon inspection, the bag was found to contain crack cocaine.

After handcuffing Defendant, Officers Jones and Goyette retraced the path of the chase and recovered a 9-millimeter handgun and a dollar bill. Defendant's fingerprints were not found on the handgun and Defendant did not own the gun. The grass in the field through which the chase had passed was wet from dew. The handgun was absent of any moisture and had no dirt or leaves on it.

Defendant was charged with one count each of possession with intent to sell and deliver a controlled substance, carrying a concealed

·weapon, possession of a firearm by a convicted felon, and resisting, delaying, or obstructing a public officer. At trial, Defendant raised no objections concerning the constitutionality of the initial detention. Rather, Defendant's counsel argued that Defendant was under no duty to stop or submit to any questioning by the officers, apparently focusing on the charge of resisting a public officer.

Before the case was given to the jury, Defendant moved to dismiss all charges. The trial court denied the motion with respect to all charges, except resisting a public officer. The jury found Defendant guilty of the remaining charges: possession of a controlled substance, carrying a concealed firearm, and possession of a firearm by a convicted felon. Defendant appeals.

## I. The Detention

**[1]** Defendant first argues that all his convictions must be reversed because the trial court failed to exclude evidence obtained after the officers unconstitutionally stopped Defendant without a reasonable suspicion that criminal activity was afoot. Defendant asserts the evidence obtained as a result of the stop was tainted by the unconstitutional nature of the stop and, therefore, the trial court committed plain error in failing to exclude the evidence. Before determining whether the trial court committed plain error, we first determine whether there was any error made at all. *State v. Torrain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, cert. denied, 479 U.S. 836, 93 L. Ed. 2d 77 (1986).

The Fourth Amendment to the United States Constitution protects a defendant from unreasonable searches and seizures. U.S. Const. Amend. IV. This protection has been made applicable to the states by the Fourteenth Amendment. *See State v. Milien*, 144 N.C. App. 335, 339, 548 S.E.2d 768, 771 (2001). To be reasonable, an *arrest* must generally be supported by probable cause and a warrant. *Id.* ·The United States Supreme Court has recognized circumstances allowing officers to briefly detain suspects for an investigatory stop where an officer has a reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30-31, 20 L. Ed. 2d 889, 911 (1968); *see also State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007), *aff'd*, 362 N.C. 244, 658 S.E.2d 643, *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 198 (2008). This reasonable suspicion must be based on the attendant facts and circumstances. *Id.* In *Illinois v. Wardlow*, 528 U.S. 119, 124-25, 145 L. Ed. 2d 570, 576-77 (2000), the Supreme Court held that a suspect's unprovoked flight from police officers may prop-

erly be considered as a factor giving rise to a reasonable suspicion to detain the suspect.

The dispositive issue in the case before us is a determination of whether Defendant was seized before or after he ran from the officers. When the officers approached Defendant and asked him to stop, they were aware only that Defendant and another man were walking together in a high crime area. If the officers seized Defendant prior to his flight, then they would have lacked grounds for detention of Defendant, rendering the subsequent detention unconstitutional. If, however, the moment of seizure did not arise until after Defendant fled, then the officers could properly have considered Defendant's flight as a factor justifying an investigatory stop.

In determining whether Defendant was seized prior to his flight, we must decide whether he submitted to the authority of the officers. *See California v. Hodari D.*, 499 U.S. 621, 626, 113 L. Ed. 2d 690, 697 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not."). Defendant contends that he stopped and submitted to the officers' authority after Officer Goyette asked him to "hold up" and told him the officers "needed to speak with [him] for a minute." The State argues that Defendant neither stopped nor submitted to authority, but rather ran as soon as the officers initiated contact.

Each officer testified to a slightly different version of events at trial. Officer Goyette testified that "before [he] could even exit [his] vehicle [he] heard Officer King shout: stop, stop. And that's when [he] looked in [his] rearview mirror and the Defendant was already running." Officer Jones testified that "[the officers] got out and attempted to approach the subjects. And one of them, [Defendant], took off running." Officer King testified that "[a]s [he] was exiting the front passenger side of the vehicle, [he] noticed [Defendant] take off running very fast[.]" Officer Jones appears to be the only officer who actually exited the vehicle and began moving towards Defendant, and even his testimony is unclear regarding whether Defendant stopped and submitted to the detention. We find that a reasonable interpretation of this testimony could conclude that the officers were in various stages of exiting the vehicle and that Defendant began to run away before stopping and submitting to their authority. Therefore, his flight could properly be considered in conjunction with the attendant facts and circumstances, and we find his subsequent detention to be sup-

ported by a reasonable suspicion that Defendant was engaged in some criminal activity.

Because Defendant suffered no violations of his Fourth Amendment rights, any evidence obtained after Defendant's stop would have been admissible whether or not defense counsel had objected at trial. Therefore, we can find no error, much less plain error, in the trial court's admission of the evidence obtained after Defendant's stop.

## II. Constructive Possession

[2] Defendant next argues that the trial court erred in denying his motion to dismiss the charges of possession of a firearm by a felon and carrying a concealed weapon. Defendant argues that the State failed to present sufficient evidence that Defendant ever possessed the handgun found by the officers. We disagree.

A trial court's ruling on a motion to dismiss is reviewed *de novo*. *State v. Davis*, —— N.C. App ——, ——, 678 S.E.2d 385, 388, (2009). In order to prevail on a motion to dismiss, a defendant must show that there is not " 'substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.' " *State v. McNeil*, 165 N.C. App 777, 781, 600 S.E.2d 31, 34 (2004), *aff'd*, 359 N.C. 800, 617 S.E.2d 271 (2005) (quoting *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 139 (2002)). On appeal, this Court must view the evidence " 'in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence.' " *Id.* (quoting *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998)).

To withstand a motion to dismiss charges of possession of a firearm by a felon or carrying a concealed weapon, the State must show that a defendant possessed or carried the weapon in question. N.C. Gen. Stat. § 14-415.1 (2007); N.C. Gen. Stat. § 14-269 (2007). Where police officers do not find the defendant in actual possession of a weapon, the State may nonetheless sustain a conviction based upon a theory of constructive possession. Constructive possession arises where a defendant is not in actual possession of an object, but has both the power and intent to control the object. *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989). Where a defendant is not in exclusive control of the place where the object is found, the State must show other incriminating circumstances to give rise to an inference of constructive possession. *Id.*

We find a recent unpublished opinion of our Court, *State v. Little*, 179 N.C. App. 655, 635 S.E.2d 73, 2006 WL 2807185 (unpublished), to be informative on this issue. Though an unpublished opinion, the facts in *Little* are markedly similar and the legal reasoning sound. In *Little*, an officer received a call reporting the description of a suspicious person "casing" an area and found Mr. Little, who matched the description, standing beside a shed located near the area in question. *Id.* at *1. The officer stopped his patrol car approximately fifty feet away from Mr. Little and motioned for Mr. Little to approach the car. *Id.* As Mr. Little approached, the officer's attention was diverted for five or six seconds when his microphone fell to the floor of the car. *Id.* Mr. Little was about twenty feet away when the officer next observed him. *Id.* The officer conducted a consent search of Mr. Little and asked him to wait at the patrol car while the officer searched the area where Mr. Little had been spotted. *Id.*

As the officer walked to where he had first seen Mr. Little, he observed that the grass around the area was covered with dew. *Id.* The officer's boots got wet because of the moisture. *Id.* The officer then found a loaded gun near where he had originally discovered Mr. Little and near the area where he had lost eye-contact with him when his microphone fell. *Id.* The gun was dry. *Id.* There were no other tracks found in the area and the grass in the area had not been otherwise disturbed. *Id.* Mr. Little was charged with, and ultimately convicted of, possession of a firearm by a felon. *Id.*

At trial, Mr. Little moved to dismiss the charge of possession of a firearm by a felon, arguing that the State failed to offer sufficient evidence that he had in fact possessed the weapon. *Id.* at *5. The trial court denied Mr. Little's motion. *Id.* Our Court found no error on these facts, observing that "[t]he State presented sufficient evidence to carry the case to the jury." *Id.* We held "[t]he trial court properly denied [Mr. Little's] motion to dismiss." *Id.*

In the case before us, the evidence tended to show that Defendant ran through an open field in a high traffic area. Defendant appeared to have something heavy in his back pocket and appeared to make throwing motions from that pocket. The grass in the field was wet. When the officers found the weapon, it was dry, clean, and had no leaves or other debris on it. We note that "constructive possession depends on the totality of the circumstances in each case. No single factor controls, but ordinarily *the questions will be for the jury.*" *State v. Butler*, 147 N.C. App. 1, 11, 556 S.E.2d 304, 311 (2001)

(quoting *State v. Jackson*, 103 N.C. App. 239, 243, 405 S.E.2d 354, 357 (1991), *aff'd*, 331 N.C. 113, 413 S.E.2d 798 (1992)).

Viewing the evidence in the light most favorable to the State, we hold that there was sufficient evidence presented for the State to proceed on a theory of constructive possession. Therefore, Defendant failed to show that there was not substantial evidence of each essential element of the charges against him. We therefore hold that the trial court did not err in denying Defendant's motion to dismiss the charges of possession of a firearm by a convicted felon and carrying a concealed firearm.

### III. Ineffective Assistance of Counsel

[3] Defendant further argues that because his counsel failed to object to the introduction of all evidence obtained pursuant to Defendant's detention, his counsel's representation was deficient and unreasonable, and produced an unjust result, thereby denying Defendant of the effective assistance of counsel. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court held that the Sixth Amendment to the United States Constitution required counsel to provide representation which meets "an objective standard of reasonableness." *Id.* at 687-88, 80 L. Ed. 2d at 693. To show that counsel's performance did not meet this standard of reasonableness, a defendant must show the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 80 L. Ed. 2d at 693. Our Supreme Court adopted the standard set forth in *Strickland* in 1985. *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). However, in *State v. Lee*, our Supreme Court held that the failure to object to admissible evidence does not constitute an error which would satisfy the first prong of the *Strickland* test. *State v. Lee*, 348 N.C. 474, 492, 501 S.E.2d 334, 345, (1998) ("The

**IN RE T.B.**

[200 N.C. App. 739 (2009)]

first part of the *Strickland* test is not satisfied where defendant cannot even establish that an error occurred.").

Defendant claims that he received ineffective assistance of counsel because his trial attorney failed to object to the admission of evidence obtained subsequent to Defendant's stop. Because we have held Defendant's stop constitutional, and the evidence thereafter obtained admissible, Defendant's claim must fail. The failure to object to admissible evidence is not error. Thus, Defendant cannot satisfy the first element of the *Strickland* test.

Defendant has not argued his remaining assignments of error and they are therefore abandoned pursuant to N.C.R. App. P. 28(b)(6).

No error.

Judges STEELMAN and JACKSON concur.