BERGER, Judge.
 

 *2
 

 *719
 
 On October 3, 2016, the Duplin County Grand Jury indicted Toni Turnage ("Defendant") for fleeing to elude arrest, resisting a public officer, and two counts of child abuse. Defendant filed a Motion to Suppress in Duplin County Superior Court alleging law enforcement did not have reasonable suspicion to stop Defendant's vehicle, and the seizure of Defendant violated the Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution. The trial court granted Defendant's motion. We reverse.
 

 *720
 

 Factual and Procedural Background
 

 Defendant's Motion to Suppress was heard in Duplin County Superior Court on March 21, 2017. The State's only witness at the suppression hearing was Detective Shane Miller of the Duplin County Sheriff's Department. Defendant did not put on any evidence.
 

 The evidence tended to show that detectives with the Duplin County Sheriff's Department received several complaints regarding apparent drug activity at 155 John David Grady Road in Duplin County. On March 23, 2016, detectives conducted surveillance of the area. Lieutenant Chuck Weaver and Detective Allen Williams were in an unmarked Ford pickup truck with Detective Miller, while Detectives Michael Tyndall, Matthew Strickland, and Jay Lanier were in an unmarked Chevrolet pickup truck. The detectives were in plain clothes.
 

 As Detective Miller was arriving to the area, Detective Tyndall's unit reported a burgundy van leaving 155 John David Grady Road. Detective Miller observed the burgundy van traveling west on John David Grady Road, approaching the intersection of Woodland Church Road. Detective Miller noticed the van was driven by a female and that there was a male passenger. Detective Miller followed the burgundy van for approximately one-half mile after the female driver turned onto Woodland Church Road.
 

 Suddenly, and without warning, the burgundy van stopped in the middle of Woodland Church Road. Detective Miller waited approximately fifteen seconds, and activated the blue lights on the patrol unit because he "didn't want anybody coming down the road ... [to] hit the vehicle, [and] cause a[n] accident." Detective Miller testified:
 

 Well, the van was obviously stopped in the roadway so we didn't know what was going on. We didn't know if the van had broken down or if there was a problem in the van or what was going on in the van. So at that point in time I activated my blue lights because there was a van in the roadway.
 

 Detective Miller further elaborated that "[i]f a vehicle is stopped in the roadway, [blocking] traffic, impeding traffic, broke down, whatever, I want to know what's going on with that vehicle. So I activate my emergency equipment to let people know, hey, something going on here, be careful."
 

 The Ford pickup truck driven by Detective Miller was located approximately fifteen feet from the burgundy van in the middle of the
 
 *721
 
 roadway. As Detective Miller attempted to approach the driver's side of the vehicle, he noticed a male subject exit the passenger side of the burgundy van. Detective Miller recognized the male subject to be Donnie Barton, an individual known to Detective Miller through prior law enforcement encounters. Detective Miller testified:
 

 I went to get out of the [patrol vehicle] and all of a sudden a male subject from the passenger side of the van gets out of the van, hands in pocket, and starts walking toward the patrol vehicle. At that point in time I told Detective Williams who was in the passenger side of my patrol vehicle to get out of the vehicle because he was
 
 *3
 
 approaching us with his hands in his pockets.
 

 ....
 

 We didn't know if there was a weapon in his pocket, if there were drugs in his pocket or what he was up to.
 

 Mr. Barton then ran back to the van, yelling, "Go, go, go." The burgundy van sped away, and Detective Miller returned to the Ford pickup truck, activated the siren, and began pursuing the burgundy van.
 

 During the mile and a half pursuit, Detective Miller observed the burgundy van run off the shoulder of the road, cross the center line, and travel in excess of eighty miles per hour in a fifty-five mile-per-hour zone. Deputy Anthony Toler positioned his vehicle at an intersection and prevented the burgundy van from advancing. Defendant was removed from the driver's seat. Detective Miller then heard two children, ages two and three, crying in the back of the burgundy van.
 

 No illegal drugs or contraband were located in the burgundy van. Defendant was arrested for fleeing to elude arrest, resisting a public officer, and two counts of child abuse. The Department of Social Services was contacted by law enforcement and Mr. Barton's father assumed custody of the two children.
 

 In open court, the trial court made findings of fact, including:
 

 The burgundy vehicle came to a stop on Woodland Church Road. The officer drove up behind the vehicle and activated his blue lights about 10 to 15 seconds after the vehicle had stopped.
 

 ....
 

 *722
 
 Immediately after stopping his vehicle, Detective Miller exited the driver's door and began approaching the driver's door of the burgundy van. Detective Williams exited from the passenger door of the law enforcement vehicle and began approaching the passenger door of the burgundy van.
 

 The male exited the passenger side of the burgundy van with his hands in his pockets. At some point after that, he turned, hollered to the driver of the van, "Go, go, go" and ran and jumped in the van. At this point, the van rapidly accelerated and sped off.
 

 The trial court concluded that "there was a seizure of the van and its occupants when Detective Miller came up behind the stopped van and activated his blue lights." The trial court further concluded that there was no reasonable suspicion of criminal activity and Defendant's rights preserved under the Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution had been violated.
 
 [1]
 

 The State timely entered notice of appeal in open court immediately following the March 21, 2017 hearing on the motion to suppress. However, the trial court subsequently entered a written order on March 29, 2017, finding that "[s]topping the van was inconsistent with criminal activity inside the van[,]" and "[t]here was no objectively reasonable basis for Detective Miller to believe the van was disabled or that its occupants were in danger."
 

 The trial court's written order concluded that a seizure of Defendant had occurred when Detective Miller pulled "behind the stopped van and activated his blue lights." The trial court further concluded "there was no reasonable suspicion of criminal activity to justify a stop or a seizure of the van or its occupants."
 

 *723
 

 Standard of Review
 

 In determining whether the trial court properly granted a defendant's motion
 
 *4
 
 to suppress, our review "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cathcart
 
 ,
 
 227 N.C. App. 347
 
 , 349,
 
 742 S.E.2d 321
 
 , 323 (2013) (citation omitted). "Conclusions of law are reviewed
 
 de novo
 
 ."
 
 State v. Gerard
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 592
 
 , 594 (2016) (citation omitted).
 

 The State does not challenge the trial court's findings of fact despite some difference with regards to Detective Miller's testimony. Thus, the trial court's findings are binding on appeal.
 
 State v. McLeod
 
 ,
 
 197 N.C. App. 707
 
 , 711,
 
 682 S.E.2d 396
 
 , 398 (2009) ("Unchallenged findings of fact, where no exceptions have been taken, are presumed to be supported by competent evidence and binding on appeal." (citation, quotation marks, ellipses and brackets omitted) ).
 

 Analysis
 

 The State argues the trial court erred in concluding a seizure of Defendant occurred when Detective Miller activated his blue lights approximately fifteen seconds after Defendant stopped the burgundy van in the middle of Woodland Church Road. We agree, and reverse the trial court.
 

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.
 

 U.S. Const. amend. IV. " Article I, Section 20 of the Constitution of North Carolina likewise prohibits unreasonable searches and seizures and requires that warrants be issued only on probable cause."
 
 State v. Allman
 
 ,
 
 369 N.C. 292
 
 , 293,
 
 794 S.E.2d 301
 
 , 303 (2016). A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 , 19 n.16,
 
 88 S.Ct. 1868
 
 , 1879 n.16,
 
 20 L.Ed.2d 889
 
 , 905 n.16 (1968). There must be "a physical application of force or submission to a show of authority" for a seizure to be found.
 
 State v. Cuevas
 
 ,
 
 121 N.C. App. 553
 
 , 563,
 
 468 S.E.2d 425
 
 , 431,
 
 disc. review denied
 
 ,
 
 343 N.C. 309
 
 ,
 
 471 S.E.2d 77
 
 (1996) (citation omitted).
 

 *724
 
 "The activation of blue lights on a police vehicle has been included among factors for consideration to determine when a seizure occurs."
 
 State v. Baker
 
 ,
 
 208 N.C. App. 376
 
 , 386,
 
 702 S.E.2d 825
 
 , 832 (2010). However, a simple show of authority by law enforcement does not rise to the level of a seizure unless the suspect submits to that show of authority.
 
 California v. Hodari D.
 
 ,
 
 499 U.S. 621
 
 , 626,
 
 111 S.Ct. 1547
 
 , 1550,
 
 113 L.Ed.2d. 690
 
 , 697 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not.").
 

 This Court held that an individual is not seized for Fourth Amendment purposes by a mere show of authority by law enforcement, but rather when that individual is physically restrained.
 
 State v. Leach
 
 ,
 
 166 N.C. App. 711
 
 , 717,
 
 603 S.E.2d 831
 
 , 835 (2004),
 
 appeal dismissed
 
 ,
 
 359 N.C. 640
 
 ,
 
 614 S.E.2d 538
 
 (2005). In
 
 State v. Leach
 
 , officers attempted to arrest the defendant on drug-related charges.
 
 Id.
 
 at 713,
 
 603 S.E.2d at 833
 
 . The officers identified themselves as law enforcement, and surrounded the defendant in his vehicle.
 

 Id.
 

 The defendant fled and led officers on a high-speed chase that ended after he crashed the vehicle in a ditch and officers detained the defendant when he attempted to flee on foot.
 

 Id.
 

 At different points during the chase, the defendant threw away a firearm and a plastic bag containing cocaine.
 

 Id.
 

 In upholding the trial court's denial of the defendant's motion to suppress, this Court held that a seizure did not occur "until defendant was physically restrained."
 
 Id.
 
 at 717,
 
 603 S.E.2d at 835
 
 .
 

 In
 
 State v. Mewborn
 
 , officers drove alongside the defendant, who was walking in the roadway of a high-crime area. Neither defendant nor his companion were violating any laws at the time.
 
 State v. Mewborn
 
 ,
 
 200 N.C. App. 731
 
 , 732,
 
 684 S.E.2d 535
 
 , 536 (2009).
 

 *5
 
 Officers asked the two if they would stop to talk for a few minutes.
 
 Id.
 
 at 733,
 
 684 S.E.2d at 536
 
 . When officers were exiting the vehicle, the defendant ran away from the officers, and they began pursuit.
 

 Id.
 

 During the pursuit, the defendant threw a firearm on the ground.
 
 Id.
 
 at 733,
 
 684 S.E.2d at 537
 
 . After he was apprehended, the defendant threw a plastic bag containing crack cocaine on the ground.
 

 Id.
 

 The defendant was charged with possession with intent to sell and deliver a controlled substance, carrying a concealed weapon, possession of a firearm by a felon, and resisting a public officer.
 
 Id.
 
 at 733-34,
 
 684 S.E.2d at 537
 
 .
 

 The defendant argued that he was unconstitutionally seized by officers when they asked him to stop and talk without reasonable suspicion.
 
 Id.
 
 at 734,
 
 684 S.E.2d at 537
 
 . This Court noted that "[t]he dispositive
 
 *725
 
 issue in the case before us is a determination of whether [d]efendant was seized before or after he ran from the officers."
 
 Id.
 
 at 735,
 
 684 S.E.2d at 537
 
 . This Court held that the defendant had not been seized when he initially fled because he did not submit to a show of authority, stating, "[T]he officers were in various stages of exiting the vehicle and that [d]efendant began to run away before stopping and submitting to their authority."
 
 Id.
 
 at 735-36,
 
 684 S.E.2d at 538
 
 .
 

 In
 
 State v. Mangum
 
 , officers received an anonymous tip concerning an impaired driver.
 
 State v. Mangum
 
 , --- N.C. App. ----, ----,
 
 795 S.E.2d 106
 
 , 109 (2016),
 
 writ denied
 
 ,
 
 disc. review denied
 
 ,
 
 appeal dismissed
 
 ,
 
 369 N.C. 536
 
 ,
 
 797 S.E.2d 283
 
 (2017). Officers located the vehicle, and observed that it was traveling fifteen miles per hour below the speed limit, and that it stopped in the roadway on two occasions, once at an intersection where there were no traffic control devices, and subsequently at a railroad crossing without active traffic signals.
 

 Id.
 

 at ----,
 
 795 S.E.2d at 110
 
 . The officer following the defendant activated his blue lights, but the defendant did not pull over immediately.
 

 Id.
 

 After approximately two minutes, the officer activated the siren on his patrol vehicle, and the defendant stopped in the roadway a short time later.
 

 Id.
 

 The defendant was arrested for driving while impaired.
 

 Id.
 

 This Court held the defendant was not seized when the officer activated his blue lights and siren, but rather when he stopped the vehicle, yielding to the officer's show of authority.
 

 Id.
 

 at ----,
 
 795 S.E.2d at 116
 
 .
 

 Here, no officer in the unmarked Ford pickup truck identified himself as a law enforcement officer before Defendant stopped her vehicle. While the trial court did find that "[t]he detective noted the driver and passenger look[ed] at him and seem[ed] to stare at him before" turning onto Woodland Church Road, there was no evidence that Defendant knew or reasonably believed the three individuals in the Ford pickup truck were law enforcement officers. Detective Miller was following Defendant in an unmarked vehicle, and Defendant had not violated any laws. There was no action on the part of law enforcement that caused Defendant to stop her vehicle or otherwise impede her movement. Defendant's motionless vehicle in the middle of a public roadway invited an encounter with any concerned motorist, including law enforcement officers.
 

 "Police are free to approach and question individuals in public places when circumstances indicate that citizens may need help or mischief might be afoot."
 
 State v. Icard
 
 ,
 
 363 N.C. 303
 
 , 311,
 
 677 S.E.2d 822
 
 , 828 (2009) (citations omitted). A vehicle inexplicably stopped in the middle of a public roadway is a circumstance sufficient, by itself, to indicate someone in the vehicle may need assistance, or that mischief is
 
 *726
 
 afoot. At the very least, it is a situation which warrants notice to other motorists and it is not the role of this, or any other court, to "indulg[e] in unrealistic second-guessing of [a] law enforcement [officer's] judgment call[ ]."
 
 Mangum
 
 , --- N.C. App. at ----,
 
 795 S.E.2d at 118
 
 (citation and quotation marks omitted).
 

 Here, Detective Miller waited behind Defendant's vehicle for approximately fifteen seconds before activating his blue lights. By his testimony, he was unsure if the vehicle had broken down, and was attempting to alert other possible motorists of a potential hazard in the roadway.
 

 Further, for reasons known only to her and perhaps Mr. Barton, Defendant inexplicably
 
 *6
 
 stopped the burgundy van in the middle of Woodland Church Road prior to any show of authority from law enforcement. Detectives were not identified as law enforcement until Detective Miller activated his blue lights approximately fifteen seconds after Defendant stopped the burgundy van. Thus, the earliest point at which detectives made a show of authority was activation of the blue lights on the Ford pickup truck. Consistent with
 
 Mangum
 
 , the mere activation of the vehicle's blue lights did not constitute a seizure as Defendant did not yield to the show of authority.
 

 Mr. Barton exited Defendant's vehicle as Detective Miller was attempting to approach. However, he instructed Defendant to flee. As in
 
 Leach
 
 and
 
 Mewborn
 
 , Defendant fled prior to submitting to a show of authority.
 

 Defendant then led officers on a lengthy, high-speed chase with two small children in the vehicle. She did not submit to the officers' show of authority until she discontinued fleeing from officers and further movement was prevented by Deputy Toler's vehicle. It was at this point that Defendant was seized pursuant to the Fourth Amendment. The criminal activity observed by Detective Miller during the mile and a half car chase, and subsequently his observations of the two minor children in the van, justified Defendant's arrest for fleeing to elude arrest, resisting a public officer, and two counts of child abuse.
 

 Conclusion
 

 Defendant was not seized under the Fourth Amendment when Defendant stopped her burgundy van in the middle of Woodland Church Road. The trial court erred in granting Defendant's motion to suppress. Accordingly, we reverse and remand to the trial court.
 

 REVERSED AND REMANDED.
 

 Judges BRYANT and MURPHY concur.
 

 [1]
 

 The State did not argue during the pre-trial hearing or on appeal whether a defendant stopping a vehicle in the middle of a lane of travel on a public roadway, standing alone, constituted a moving violation justifying a stop. As such, this opinion does not address that issue, but rather whether a seizure occurs when a motorist inexplicably stops in the middle of a public roadway and an officer subsequently activates his blue lights.
 

 In addition, the trial court made conclusions of law regarding the community caretaker exception which we need not address as the issue is not argued by the State on appeal, and because of our holding that Defendant was not seized when Detective Miller initially activated his blue lights.