IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-717

No. COA22-258

Filed 1 November 2022

Forsyth County, No. 17 CRS 61652

STATE OF NORTH CAROLINA

v.

MARK RONELL TABB, II

Appeal by defendant from order entered 24 September 2021 by Judge Forrest
D. Bridges in Forsyth County Superior Court. Heard in the Court of Appeals 4
October 2022.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Liliana R.*
> *Lopez, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender John F.*
> *Carella, for defendant-appellant.*

TYSON, Judge.

¶ 1        Mark Ronnell Tabb II ("Defendant") appeals from judgment entered upon his
guilty plea. We affirm.

## I.    Background

¶ 2        The facts and procedural history underlying this case are set forth in detail in
this Court's prior opinion, *State v. Tabb*, 276 N.C. App. 52, 853 S.E.2d 871, 2021-
NCCOA-34 (2021) (unpublished). The pertinent facts are:

Winston-Salem Police Officers, E.W. Boyles, D.T. Rose, and M.L. Dime, were patrolling the Greenway Apartment Complex ("Greenway") on foot. Greenway is a "known area" for sales of illegal narcotics and prostitution. Police officers regularly patrolled Greenway's public areas on both foot and in their vehicles.

The three officers parked their vehicles and began patrolling Greenway on foot between 11:00 p.m. and 12:00 a.m. on the night of 19 December 2017. While patrolling, the three officers observed a stationary vehicle, not parked in a parking space, but stopped in the middle of the parking lot. The vehicle was not moving, but the engine appeared to be running, and its lights were illuminated. Nothing was located in front of or behind the vehicle to limit movement or to prevent the vehicle from driving away.

Officer Boyles had responded in the past to "various calls for . . . narcotics and sales of narcotics" in Greenway. Officer Boyles had observed people using narcotics in the Greenway parking lot areas. All three officers knew from their training and past experience that criminals routinely pulled into the Greenway's parking lot and stopped briefly to conduct illegal activities, including narcotics sales and prostitution.

The officers observed the stationary vehicle for a period of time before approaching it together. Officer Rose testified the officers approached the stopped vehicle because of the factors above and due to the time of the night in a residential area that is known for criminal activity. As the officers approached the vehicle, they observed multiple occupants were seated inside.

Officer Rose approached the stopped vehicle and knocked on the driver's side window. He testified he observed the driver move his right hand to between the seat and the center console, as if trying to reach for or conceal something. Officer Rose asked the driver to step out of the vehicle. As soon as the door opened, Officer Rose

also noticed the strong odor of marijuana emanating from inside the vehicle.

Officers Dime and Boyles approached the passengers' side of the vehicle. As Officer Boyles approached the passengers' side front door, he observed Defendant had currency displayed on his lap and also green marijuana in the areas near his waist band.

As Officer Dime approached the vehicle, he smelled a strong odor of marijuana and observed Defendant with a "bag of green vegetable matter," which he recognized as marijuana.

Officer Boyles asked Defendant to also step out of the vehicle because of the quantity of currency and marijuana he had observed upon approaching the vehicle. Officers Boyles and Dime opened the passenger's door, reached inside, and restrained Defendant's arms to prevent him from grabbing evidence, and had him to exit from the vehicle.

As Officer Dime handcuffed Defendant, he noticed a bag of white powder upon the ground next to the vehicle. Officer Dime informed Officer Boyles about the bag. Officer Boyles spotted the bag and believed it to contain powdered cocaine. Officer Boyles was concerned Defendant would attempt to kick or destroy the bag in some manner, so he moved Defendant away from the bag. Officer Boyles picked up the bag and placed it on top of the vehicle. Officer Boyles used a field kit to test the white powdery substance in the bag and it returned positive results as cocaine.

Officer Dime searched Defendant for additional drugs and weapons. Officer Dime found additional currency inside of Defendant's pocket. The three officers searched the vehicle. On the front passenger's floorboard, they found a marijuana pipe inside a box. In the backseat pocket they found a digital scale. On the vehicle's

dashboard, the Officers found more cash. Between the front passenger's seat and console, they found loose, green marijuana.

Officer Boyles spoke with Naudica McCoy, the rear seat passenger. She told Officer Boyles that day was her birthday. The driver and Defendant had given her free marijuana as a birthday present. McCoy told the officers she had purchased marijuana from Defendant in the past, but not that night. McCoy lived in Greenway apartments. She was released and free to leave and went to her home after speaking with the officers.

¶ 3 *Id.* at ¶¶ 2-12. Defendant was arrested and charged with possession with intent to sell and deliver marijuana, possession with the intent to sell and deliver, and possession of marijuana paraphernalia. Defendant was indicted for possession of marijuana up to one and a half ounces, felony possession of cocaine, and possession of marijuana paraphernalia.

¶ 4 Defendant filed a motion to suppress all evidence found and recovered from the search of Defendant and in the vehicle. The trial court denied Defendant's motion. Defendant pleaded guilty to all charges pursuant to a plea agreement, which preserved his right to appeal the trial court's denial of his motion to suppress. The trial court sentenced Defendant to a term of 6 to 17 months, suspended the sentence, and placed him on 18 months of supervised probation.

¶ 5 Defendant appealed the denial of his motion to suppress to this Court. On appeal, this Court affirmed the judgment in part and remanded to the trial court

"with instructions to make a finding of fact of the sequence when Officer Rose made a show of force and the driver was seized and whether to grant or deny Defendant's motion to suppress." *Id.* at ¶ 27. Upon remand the trial court found:

> 20. Because the actions of the officer on the driver side and passenger side of the vehicle, respectively, took place in an almost completely simultaneous manner, none of the actions of any of the officers would have caused the Defendant to believe that he or the driver had been seized until Defendant was removed from the vehicle.
>
> 21. Based upon the totality of the circumstances in this case, no reasonable person in the Defendant's position would have concluded that he was not free to leave prior to the command by Officer Boyles to all of the vehicle, including the driver, to put their hands on (sic) the dashboard and not to move, a command that was triggered by his observation of money and marijuana on the person of the Defendant.

¶ 6        The trial court concluded Officer Boyles' actions were "independent of [ ]and not triggered by events occurring on the driver's side of the vehicle." The trial court held the detention of the driver "was reasonably related to the observations of Officer Rose." The trial court further held "the seizure of this Defendant occurred when he was removed from the vehicle, an event that occurred one or two seconds after the seizure of the driver[.]" The trial court held the search was constitutional. Defendant appeals.

## II.    Jurisdiction

¶ 7        This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 15A-979(b)

(2021).

## III. Issues

Defendant argues the trial court erred by denying his motion to suppress the evidence obtained at the scene.

## IV. Defendant's Motion to Suppress

### A. Standard of Review

> The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. However, when . . . the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed *de novo* and are subject to full review. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.

*State v. Biber*, 365 N.C. 162, 167-68 712 S.E.2d 874, 878 (2011) (citations and quotation marks omitted).

### B. Article 1, § 20 of the North Carolina Constitution

Defendant argues the actions of the officers and the denial of his motion to suppress amounted to a violation of Article 1, § 20 of the North Carolina Constitution. Article 1, § 20 of the North Carolina Constitution provides:

> General warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall

not be granted.

N.C. Const. art. I, § 20.

¶ 10 Our Rules of Appellate Procedure provide: "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C R. App. P. 10(a).

¶ 11 Our Supreme Court and this Court have consistently applied this binding precedent to dismiss unpreserved issues. "It is well settled that an error, even one of constitutional magnitude, that [the] defendant does not bring to the trial court's attention is waived and will not be considered on appeal." *State v. Bell*, 359 N.C. 1, 28, 603 S.E.2d 93, 112 (2004) (citation and quotation marks omitted).

¶ 12 Defendant did not specifically raise an argument before the trial court invoking the North Carolina Constitution Article 1, § 20. Any appellate review of this unpreserved constitutional issue under this provision is waived. N.C. R. App. P. 10(a). Defendant's argument under this provision is dismissed. *See State v. Goncalves*, __ N.C. App. __, __ S.E.2d __, 2022-NCCOA-610 (2022) (unpublished).

### C. Defendant's Seizure

Defendant argues the officers' effected a suspicion-less seizure of the driver and all occupants of the car, without reasonable suspicion in violation of the Fourth Amendment.

"[A] person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L.Ed.2d 497, 509 (1980). A traffic stop seizes the driver within the Fourth and Fourteenth Amendments "even though the purpose of the stop is limited and the resulting detention is quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L.Ed.2d 660, 667 (1979) (citations omitted).

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied[.]" *Brendlin v. California*, 551 U.S. 249, 254, 168 L.Ed.2d 132, 138 (2007) (citations and quotation marks omitted).

The undisputed facts before us show the officers did not initiate a stop, the vehicle *was stationary*, *with its lights on* and its *engine running* in an *open parking lot* lane when the officers approached the vehicle together on foot. The officers, while on foot, did nothing to stop, block, nor prevent the driver from driving the vehicle away.

¶ 17      In *State v. Turnage*, a detective following a van observed the van "[s]uddenly, and without warning, . . . stop[] in the middle of [the road]." *State v. Turnage*, 259 N.C. App. 719, 720, 817 S.E.2d 1, 2 (2018). After the vehicle had stopped, the detective illuminated his vehicle's emergency lights. *Id.* He testified he did so because he did not want a car coming from the other direction of travel to hit the van stopped in the middle of the road. He also did not know whether the van had stalled and broken down. *Id.* As the detective exited his vehicle, the van sped away.

¶ 18      This Court concluded no seizure had occurred until the subsequent chase ended because "[a] vehicle inexplicably stopped in the middle of a public roadway is a circumstance sufficient, by itself, to indicate someone in the vehicle may need assistance, or that mischief is afoot." *Id.* at 725-26, 817 S.E.2d at 5.

¶ 19      This Court noted: "Police are free to approach and question individuals in public places when circumstances indicate that citizens may need help or mischief might be afoot." *Id.* (quoting *State v. Icard*, 363 N.C. 303, 311, 677 S.E.2d 822, 828 (2009)).

¶ 20      Defendant asserts he was seized the instant the driver was seized. The initial record did not show whether the driver opened his door and stepped out of the vehicle on his own violation or in response to the Officer Rose's purported "show of force or authority." *Brendlin*, 551 U.S. at 254, 168 L.Ed.2d at 138.

¶ 21        Upon remand, the trial court found: "the show of force by Officer Rose occurred before either of the passengers was seized by Officer Boyles and/or Officer Dime." The trial court further found: "no reasonable person in the Defendant's position would have concluded that he was not free to leave prior to the command by Officer Boyles to all of the vehicle, including the driver, to put their hands on the dashboard and not to move, a command that was triggered by his observation of money and marijuana on the person of the Defendant."

¶ 22        Police officers on foot may approach a stationary vehicle with its engine running and its lights turned on in a known area for crimes after midnight to determine if the occupants "may need help or mischief might be afoot" or to seek the identity of the occupants therein or observe any items in plain view without violating our Fourth Amendment jurisprudence. *Id.*; *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889 (1968); *Turnage,* 259 N.C. App. at 725-26, 817 S.E.2d at 5.

¶ 23        "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Id.* at 254, 168 L. Ed. 2d at 138 (citations omitted). The driver did not submit to the show of authority until the command by Officer Boyles, which was triggered by the observation of money and marijuana on Defendant's person. Defendant's argument is overruled.

¶ 24      Presuming, without deciding, the driver was seized immediately upon the show of force, the discovery and admissibility is constitutionally permissible under the plain view doctrine. *State v. Crews*, 286 N.C. 41, 45, 209 S.E.2d 462, 465 (1974). It is reasonable and customary for police officers to observe the actions and behaviors of the passengers inside a vehicle while a driver is responding to requests for identification or undergoing a *Terry* safety frisk for the officers' protection. Before Officer Dime restrained Defendant, he observed the green marijuana and currency in plain view on Defendant's lap.

¶ 25      Our Supreme Court has recognized the plain view doctrine as an exception to the warrant requirement when:

> [T]he officer was in a place where he had a right to be when the evidence was discovered and when it is immediately apparent to the police that the items observed constitute evidence of a crime, are contraband, or are subject to seizure based upon probable cause. The North Carolina General Assembly has imposed an additional requirement, not mandated by the Constitution of the United States, that the evidence discovered in plain view must be discovered *inadvertently*.

*State v. Mickey*, 347 N.C. 508, 516, 495 S.E.2d 669, 674 (1998) (emphasis original) (internal citations omitted).

¶ 26      The officers' discovery of the marijuana and currency on Defendant's lap as they approached outside the vehicle was immediately apparent, inadvertent, and inevitable. The officers had the lawful right to be at the Greenway and to approach

the vehicle already stopped. *Id.* The officers were on foot and did not block nor do anything to prevent the driver from driving the vehicle away. Presuming, Defendant was seized when the driver's door was opened, any brief period which elapsed before Officer Dime observed Defendant with the contraband in plain view on his lap does not compel a different result. *Id.*

## V. Sight of Unburnt Marijuana

Defendant argues the sight of unburnt marijuana does not give officers reasonable suspicion to search a vehicle because industrial hemp has been legal in North Carolina since 2015. *See* An Act to Recognize the Importance and Legitimacy of Industrial Hemp Research, to Provide for Compliance with Portions of the Federal Agricultural Act of 2014, and to Promote Increased Agricultural Employment, S.L. 2015-299, 2015 N.C. Sess. Laws 1483. The Industrial Hemp Act "legalized the cultivation, processing, and sale of industrial hemp within the state, subject to the oversight of the North Carolina Industrial Hemp Commission." *State v. Parker*, 277 N.C. App. 531, 539, 860 S.E.2d 21, 28, 2021-NCCOA-217, ¶ 27, *disc. review denied*, 378 N.C. 366, 860 S.E.2d 917 (2021).

Industrial hemp is the same plant species as marijuana, and the "difference between the two substances is that industrial hemp contains very low levels of tetrahydrocannabinol ("THC"), which is the psychoactive ingredient in marijuana." *Id.* at 540, 860 S.E.2d at 28, 2021-NCCOA-217, ¶ 27 (citation omitted).

¶ 29 Defendant challenges following findings of fact:

> 11. Officers Boyles and Dime approached the vehicle essentially simultaneously to the time that Officer Rose approached the vehicle on the driver's side. Officer Boyles did not know the details of Officer Rose's observations or his interactions with the driver until after he had removed the Defendant from the vehicle and his actions toward the Defendant were not triggered by or dependent upon those observations and interactions, but rather were based upon Officer Boyles' approach to the vehicle and his observation of money laid out on Defendant's lap, together with green material in his waistband area, using his senses of plain view and plain smell.

> 12. As previously noted, Officer Boyles made these observations from the exterior of the vehicle using his flashlight to see cash and green material in plain sight and smell an odor of marijuana through a partially opened window, as he approached the vehicle.

¶ 30 Defendant asserts the alleged smell of marijuana could not have formed the part of reasonable suspicion for Defendant's seizure. Defendant was present inside the vehicle, and our Supreme Court has held the mere smell of an intoxicating substance is enough to satisfy reasonable suspicion to allow the officers to inquire further. *See State v. Kitchen*, __ N.C. __, __, 872 S.E.2d 580, 587-88, 2022-NCCOA-298, ¶ 33 (2022). Defendant's argument is misplaced.

¶ 31 As in *Parker*, there was more present than just the smell or visual identification. *Id.* at 541, 860 S.E.2d at 28, 2021-NCCOA-217, ¶ 31 There was the evidence of drug distribution, the currency beside the marijuana and Defendant's

possession of marijuana near his waistband.

¶ 32    Several of the officers' observations established reasonable suspicion to detain Defendant, including: (1) scent of what police believed to be marijuana; (2) Officer Boyles's observation of "green vegetable matter," what he concluded to be marijuana; (3) the location of the material the officers believed to be marijuana; and, (4) the existence of currency established reasonable suspicion to detain Defendant. *See State v. Howard*, __ N.C. App. __, 873 S.E.2d 767, 2022-NCCOA-476 (2022) (unpublished). Upon detention, additional evidence was observed, which provided the officers probable cause to search the vehicle.  Defendant's argument is overruled.

## VI.    Conclusion

¶ 33    The trial court's unchallenged findings of fact on plain view and binding precedents support the trial court's conclusion to deny Defendant's motion to suppress and to allow the admission of the contraband found in Defendant's possession and later seized.  The driver of the vehicle was not seized until Defendant was seized.

¶ 34    The presence of contraband and evidence of drug transactions while in plain view satisfies the plain view exception to the exclusionary rule.  Presuming an unpreserved constitutional violation occurred, any purported error was harmless beyond a reasonable doubt.

¶ 35    Defendant did not specifically raise an argument under the North Carolina

Constitution before the trial court and has waived appellate review of that issue.

Defendant has demonstrated no prejudice to set aside his guilty plea or to award a

new trial. The trial court's order denying Defendant's motion to suppress is affirmed.

*It is so ordered.*

AFFIRMED.

Judges INMAN and COLLINS concur.